Here to give you this Honorable Appellate Court for the Second Judicial District is now back in session. The Honorable Susan F. Hutchinson presiding. Please be seated everyone. Your Honor, the final case on the docket this morning is 2-22-0297, for the people of the state of Illinois, sentenced Appellant B. Juan Macedo Jr., defendant's appellee. Firing away on behalf of the appellant, Mr. Myles Kelleher. Firing away on behalf of the appellee, Mr. Jeffrey Shrews Perkins. Good morning gentlemen. And Mr. Kelleher, if you're ready, you may proceed. Good morning, Your Honors. Good morning, Counsel. Myles Kelleher, on behalf of the people, may it please the Court. In this case, the post-conviction court manifestly erred when it granted defendant a new trial. The court committed two significant errors. First of all, the court erroneously barred the people from impeaching co-defendant Barham with certain evidence. And secondly, the court erroneously found that Barham's testimony was of such conclusive character that it would probably change the result on retrial. Now, co-defendant Barham, he pled guilty to this very same offense. He was the shooter. Macedo was the driver. And during the plea proceedings of Barham, the State set forth a factual basis. And the defense stipulated to that, and the trial court specifically asked Barham, do you agree with those facts, that those would be the facts that the State would present, and those are the facts that would establish your guilt? And what about counsel's argument that it's not unequal for the State to make some mistakes on a factual basis and that there's not an objection because there's no real benefit to objecting to it or to trying to correct the record? Your Honor, if that's the case, then that could be brought out on cross-examination. And if Barham was asked about that, perhaps he could explain, well, you know, maybe I didn't quite agree with this or that. But those are all points that the post-conviction court could use to assess Barham's credibility. Well, he didn't. When he asked that question of Barham, do you agree, Barham said yes. But he did he, did he, does that, when he says yes that the State would prove, does that affirm the truth of the State's factual basis? Or is that your contention? He agreed. When he said yes, he was agreeing that that is the evidence that the State would present at a trial. The State obviously has a responsibility to present only what they believe to be truthful testimony, correct? That's correct, Your Honor. And if he had any objection to any of those facts, and sometimes we see that during plea proceedings where a defendant will say, well, that's not exactly what happened. And then the trial court will take the time and say, well, you know, what do you disagree with? That didn't happen here. It was unequivocal. He agreed with everything that was in the factual basis. And, of course, there's another argument that the defense makes here is that, hey, people plead guilty for various reasons, including the fact that they're afraid of possible punishment if they don't plead guilty or if they're found guilty. What about that argument here? Well, I acknowledge that in the case of Reed, the Federal Supreme Court even said that a defendant could bring a claim of actual innocence even after pleading guilty. But I just want to point out, Barham has never alleged that he's innocent in this case. Did Barham even appeal? No. He never raised a claim of actual innocence. And, again, if there was anything like that, Your Honor, that could be brought out on cross-examination. And the State could bring out these inconsistencies. Barham would have a chance to either explain it, well, you know, this is what really happened, or he could have said, well, I didn't really agree with that particular aspect. But these are all things that could be brought out during the evidentiary hearing because the whole purpose of the evidentiary hearing was to assess the credibility of Barham because the defendant's entire claim rested on Barham's testimony alone. He had no other evidence supporting his claim. Even without Barham's testimony, even without his affidavit, or even without the cross-examination of his plea, doesn't the fact that he still put Orizaba, I forget if that's the correct word, he still puts him in the car, and that man pled guilty to obstructing justice for lying to the public defender's office about placing himself in the car. And at his hearing, he said, I was not there. I was not present. Doesn't that in and of itself undermine the credibility of Barham's affidavit and his testimony? It very much does, Your Honor. There's a post-trial hearing where Orizaba testified. He admitted he lied. He made that whole story up in an attempt to help the defendant because apparently he believed the defendant was in need and was possibly facing a long prison term. So Orizaba lied about this. And in Barham's, at the plea of guilty, Barham, in the factual basis, Barham agreed that the state would present evidence that there had been a threat. I'm sorry, that Jesse Orizaba was in the Chrysler. But then at the plea of guilty, he lied. Yes, that Orizaba was not in the car and Orizaba had lied. But then in the affidavit and testimony, this was two years after he stipulated to these facts, Barham claims that Jesse Orizaba was in the Chrysler. And the whole purpose of, you know, allegedly putting Orizaba in the Chrysler was to concoct a story that Barham Cortez and Reggie Cortez were the aggressors. But that whole story was debunked. It was fraudulent. And that was determined at the motion for a new trial. So now two years later, Barham is trying to resurrect that whole story, that whole false, fictitious version of events that Orizaba is in the Chrysler, along with Martin Cortez and Reggie Cortez. The only other person in the Chrysler was the three-year-old son. And they explain that to defendant and Barham. It's like, hey, what are you doing? I got a three-year-old son in the car. You know, knock it off. So this was the first error that the judge made. And this evidence was, you know, essential for a fair hearing because, again, the whole clue of actual innocence rested on Barham's testimony. So if there was ever a need to determine whether this witness was trustworthy, this was the case. So, counsel, you're talking about the agreement to the factual basis as a prior inconsistent statement, correct? Well, inconsistent in that he agreed to this set version of events, and then he set forth his affidavit purporting to have a new version of events. And then he testified according to that new version of events. So that's the basis. Yes, yes, Your Honor. Coming before the court. Now, what about the letter? Well, the letter is a similar situation. About six months after this offense, there was an incident at the Kane County Jail, and a letter was recovered from Barham's property.  There was a forensic analysis done on the letter. It was determined that Barham had written this letter, and the contents of the letter are damning. It essentially was an attempt by Barham to intimidate and tamper with witnesses, and he specifically mentioned the state's witnesses, Reggie and Martin Cortez. And just in summary, he's instructing someone to start looking for Reggie and Martin, tell them not to come to court, or say a black man did it, and we'll pay them money. I mean, if that doesn't go to Barham's credibility, it's hard to imagine anything that does. I mean, this is someone who doesn't care about the truth, is willing to tamper with witnesses, intimidate witnesses. He already has a prior conviction for obstructing justice. So, I mean, there's a whole host of reasons why the state should have been able to cross-examine Barham. So what indiction of reliability do we have concerning that document that the trial court should have found? What type of reliability? Do we have any date? Do we have anything to indicate when it was written? Whether it confirms that he wrote it, et cetera. The letter was recovered on October 17th of 2010. It was recovered by Officer O'Connor. He was a sheriff's deputy, and then it was sent to the Illinois Crime Lab for analysis, forensic analysis. It was determined that Barham had written this letter. The letter itself was locked in Odyssey at the time, but, you know, had the state had the opportunity to cross-examine Barham for impeachment purposes about this letter, then, you know, it's possible they may have had to bring these witnesses to perfect the impeachment, but they could have done it. So if he's willing to pay people to lie about this case, you're saying when he takes a stand and testifies years later, that's relevant to his credibility? Exactly, Your Honor. If Barham was willing to pressure witnesses to testify falsely, to blame it on a fictitious person, a reasonable inference is that he would be willing to concoct a false version of events in his affidavit and in his testimony at the third stage evidentiary hearing. And I submit that's exactly what happened in this case. Is there any indication with this letter that it was written not for Barham's benefit, but for Mercado's benefit? Well. This is, as you said, sometime after the incident, but before any pleas or anything had been entered. You know, if you look at the contents of the letter, he says we'll pay them money. So it suggests that not just he will pay them money, but Mercado, too. There were only two people in the Toyota defendant. So. Well, does we mean maybe a gang as opposed to Mercado? Well, that's a possibility also, Your Honor. Okay. But the facts of this case indicate that these two were partners in crime. They were engaged in a common criminal scheme the whole time. You referred to Barham as one of his boys. Exactly. And, you know, based on this letter, the common criminal scheme is continuing long after the commission of the offense. And even after Barham's in the penitentiary, he's still one of the defendant's boys. Yes, Your Honor. They're both still gangbangers. Yes. So this is an ongoing, you know, first they try with Jesse Orozabo to try to concoct a story. Now the defendant is trying to use co-defendant Barham to concoct a story. And that leads to the last portion of my argument, where this evidence just fails to prove a colorable claim of actual innocence. It falls far short. Claims of actual innocence are difficult to prove. Generally, you need scientific evidence or critical physical evidence or trustworthy eyewitness evidence. Here we have, all we have here is a co-defendant, and he certainly wasn't trustworthy. I had a case when I was way back an assistant state's attorney where there were co-defendants, and the judge at that time found that I had not established probable cause. I had just established that the two people who were beating up on the third person, the one wasn't beating him up, but he was just not being polite and stopping it. I didn't agree then, and I still don't agree now. But in this case, what was Barham or Mercado supposed to do if he didn't know there was a gun in the car? Was he supposed to kick Barham out of the car or throw him out during the course of this, you know, stretch through or this Grand Prix type activity through Elgin? Once the gun is pulled, and we know the defense, doesn't Mercado participate in the offense? Yes, and the notion that defendant didn't know that Barham had a gun is just not believable. First of all, that wouldn't even be admissible in evidence. How could Barham testify to what defendant knows? But you have to look at the whole, all the circumstances here, and you have to look at the way defendants are driving the vehicle. He was the aggressor. They were the aggressor. There was an incident earlier on on McLuhan Street, and then they, you know, Cortez, Martin, he tries to diffuse the situation. That's why he pulls into the blockbuster parking lot, a public place, and warns, advises, puts him on notice that there's a three-year-old in the car. He doesn't want any trouble, and he thinks it's over. Martin Cortez thinks it's over when he pulls away. But when he turns onto Wing Street, there's the defense vehicle waiting for him, and then backs up, causes a collision. Other citizens corroborated that version, correct? Yes. So since my time is up, just in summary, this falls far short of what's necessary for a colloquial claim of actual innocence, and the Edwards case confirms that. That sets a road map. All right. Thank you. You'll have an opportunity for rebuttal if you so choose. Mr. Kirkham, while you're walking up here, Mr. Kaplan, do you hear a noise? Are these the microphones, or is it the feedback because you don't know where you are? Yeah. Yeah, we're getting an echo right there. I don't think there's anything we can do to prevent it because nobody's misusing it, but it is a little annoying. So if I speak, does that little ping? Just a second. I don't know. It may be coming from there. It could be coming from up here. I don't know. It's something happening in this room, but we'll try to listen. They can hear it back there, so I know it's out and about. Can we move this back just a bit? It's pushing me back from the podium. We were just playing. I understand. Thank you. It's still making noise, but go ahead, Mr. Kirkham. We'll listen above. Okay. Thank you, Your Honor, and may it please the Court and counsel, our position is that the circuit court did not err when it granted one the state of post-conviction relief and ordered a new trial after the third stage evidentiary hearing, and we base that contention on three points. First, the post-conviction court did not abuse its discretion when it denied the state's request to admit the factual basis presented by the state at Barham's guilty plea hearing. What authority do you have for that proposition, other than the general argument that was made that, well, he doesn't have to object to it, there's no benefit to him objecting to the factual basis? Well, I cited in my case several examples of what a factual basis is intended to do. It's intended to give the court receiving the plea a basis to find that the defendant committed acts which underlie the charges into which she's pleading guilty. Now, the state has presented no evidence at all, or excuse me, no cases or authority at all, to say that the factual basis for a plea is essentially, as Justice Kennedy pointed out, a prior inconsistent statement. This is not a statement of the defendant. What he adopts of the statement is what the state would prove at trial. And is the fact that the court asked him if he agreed and he said yes, does that change? Well, what the trial court said was, do you agree that these are the facts that the state would be expecting to prove at trial? A guilty plea is not an opportunity for the parties to stand before the bench and negotiate an agreed statement of facts. You know, there's the... Well, oftentimes we see defendants who plead guilty who actually want to maintain their innocence or preserve emotion, and counsel will say, judge, or the defendant will say, this is what the state would present, but we would present other evidence that would... You understand what I'm saying? Preserving their claim of actual innocence, which, you know, for example here, Barham in his affidavit claims this was all self-defense. He never says a word about self-defense. He tells the judge, that's what the state would prove, that I intended to kill these individuals. That is a proffer of evidence from the state on what they expect to prove at trial. The defendant is under no obligation to say, yes, that is the true facts of what happened here. I understand what you're saying. And there's a spot in the memoriam. A third-stage hearing, shouldn't there be some flexibility at a third-stage hearing to allow the state to explore? For example, Orizaba, the defendant agreed with the statement of facts that Orizaba lied. He lied to the public defender's office, yet he puts that in his affidavit. Even without the plea or without the factual basis being excluded, doesn't that undermine the credibility of Barham's statement? And this is in the record. Jesse Orizaba pled guilty to obstructing justice for lying to the public defender's office. How does that not undermine the credibility of Barham's affidavit? Orizaba told different stories. It would be a question for the finder of fact on retrial, whether or not he was able to cover that. No, here is whether or not this raises to the level of a culpable claim of actual innocence, when the defendant's affidavit is completely undermined by Orizaba's and the defendant's agreement that this is what the state would prove, that Orizaba was never there. He was not in the car. How does that raise to a claim, a culpable claim of actual innocence? That would be a question of fact for the defender? That's a question that we, our job is to determine whether or not the trial court committed manifest error in granting the defendant's relief. The evidentiary question of whether the factual basis of the plea is true. This is not an evidentiary question. This is a fact that's in the record. This is not a... It is an evidentiary question because it's within the discretion of the trial court whether or not to allow evidence in at the hearing when the state attempts to impeach the defendant. This is in the record. I'm not talking about... I'm talking about something that's already in the record. It's in. It's in the record. It's at page E322. That completely undermines the credibility of Barham's affidavit. I disagree. The trial court heard the totality of the evidence. Did the trial court mention or reference this portion of the record? I don't recall. What I do know is the trial court said it considered Mr. Barham's bias. The trial court also said it considered the record. Well, and Mr. Barham doesn't consist at all about Mr. Orozaba because in earlier questioning, he never even mentions it. Then it comes up. Then it doesn't come up. Then two or three years later, it comes up again when everybody knows at that time that Mr. Orozaba was not in the crisis. Isn't that true? Well, to have this whole case turn on Mr. Orozaba seems... Well, that's the issue. ...to use the forest for the trees here. You know, Mr. Barham states he saw Orozaba in the backseat of that car. Whatever Orozaba did outside of court in relation to this case and this evidentiary hearing shouldn't control the fact that the trial court considered Mr. Barham's bias, motive, heard his testimony, and found him to be credible. What about Barham's or the defendant's statement after his arrest that Barham was one of his boys and they continue to be members of the Latin Kings even now? That's incorporated in the trial court's consideration of bias and motive. Did the court mention the defendant's statement or the relationship that Barham is one of his boys, that being one of his boys, that means Barham takes orders from him, correct? I think that's reading too much into those things. Is it really, though? This is the gang life. It's one of his boys. Which is incorporated in the concepts of bias and motive. The trial court found him to be credible on that, and that's not against the manifest way of the evidence. He was in the courtroom with Mr. Barham. He observed his demeanor as he testified. Mr. Barham was cross-examined by the state at the evidentiary hearing here, and Judge Campbell found Barham to be credible. But the judge also barred the plea and the factual basis on that, as well as the letter. So let's get to the letter. Why should the letter have been barred from use? The trial court has discretion whether or not to admit evidence and allow evidentiary matters regarding the impeachment of the witness. The trial court said, where are we going with this? The state offered an answer, and the state said that it goes to consciousness of guilt. And the trial court, within its discretion, said, no, you cannot admit that. So the state offers an offer of proof, which consists of a motion in Luminae from Barham's case prior to his guilty plea, which contains a small excerpt of this writing. There's no indication at all of to whom it was addressed, was it ever sent. We know that that particular one wasn't addressed, wasn't sent, because it was found in his cell. There's absolutely no evidence at all in this offer of proof from the state that there was ever any attempt at witness tampering. This was writings that he kept to himself in his cell. Well, it goes to his credibility, even if he didn't deliver it, the fact that he wrote these statements down, which would benefit both him and the defendant. Doesn't that go to his credibility? I mean, if he's willing to have witnesses paid to lie, doesn't that go to his credibility? We don't know that he was willing to have witnesses paid to lie. He considered that. He put it down in writing. But there's absolutely zero indication that there was ever any attempt to move in that direction. There's no step at all that's shown by anything in this record that shows any kind of witness tampering. If Barron were on trial, and this was Barron's case, and that was recovered from his cell, wouldn't it be admissible that his consciousness was guilty? We don't know what the motion would be. It's a statement by the accused. Well, I know the state cited the case of Jackson in its brief. And in that case, after a first trial, in the waiting second trial, a witness against a defendant contacted the judge and said, I have been threatened. The defendant moved to suppress the motion to eliminate, and the trial court granted that motion and would not allow that letter to come in unless the defense opened the door, which for some reason the defense did. So it's not a sure thing that the trial court would have allowed that in as consciousness of guilt. The state's own case of Jackson is factually different. Counsel, the way this writing is drafted, it sure indicates it's a communication to another person outside of, well, certainly outside of his jail cell. Tell them if they do that, we'll give them some money for saying it wasn't me or for not showing up to court. That seems like a direction toward witness tampering. So why couldn't that be brought up by way of impeachment of Mr. Barham in this hearing? We don't have any indication of who it was directed to. There's only one person that would have provided that answer, and that would have been Mr. Barham. Well, this was before his plea while he's preparing for trial. He's trying to think of ways to avoid criminal liability. If you read the readings in there, it says he refers to these witnesses as bogus and phony, which indicates that he may believe and can reasonably be inferred to be that they're lying. You're sitting in the cell looking at three counts of attempted murder, and you have state witnesses who you believe are willing to testify falsely, but you're desperate. And you write a note to yourself, maybe we can keep them from testifying. That proves nothing. Well, that might have been something Mr. Barham would have testified to on cross-examination when he's presented with it. But what was the basis for excluding, and why do you think the court was correct in doing so? The defense's objection was relevancy, and the trial court sustained the objection on that basis. And, again, you know, the rules of evidence apply at third-stage evidentiary hearings. It's within the discretion of the court. You know, we considered bias and motive. It came into evidence that Mr. Barham pled guilty, which necessarily conclusively means that there was also a factual basis presented by the state, and the trial court considered that. The trial court allowed impeachment with prior convictions. This is not a case where the trial court said, I'm going to keep this witness clean. I'm not going to allow any impeachment of him. The trial court exercised its discretion within its right to not allow the state to pursue these lines of questioning. And I think it's very important that the trial court or the post-conviction court also said this is a very powerful statement. I considered bias and motive. Okay, that's really what you're trying to get to here by letting in, letting him be questioned, and with the factual basis for his plea. He was cross-examined extensively at the evidentiary hearing. His statements and his testimony was exposed to cross-examination against the trial record. That's pretty much the factual basis of the plea is what came in at trial with some minor exceptions, and he was cross-examined about that. The state had opportunities to expose these inconsistencies to the post-conviction hearing court, which still exercised its discretion and found Mr. Barham to be credible. You know, abuse of discretion, you know, these are not, you know, fancy full rulings by the trial court. The ultimate question is manifest way to the evidence. You know, that's such a low standard. You mentioned earlier that maybe Mr. Barham was mistaken. Is that your argument about Oral Zob being in the car? I mean, Oral Zob is all over the place. He's not guilty to obstructing justice. He said he was not in the car. I don't know how that means that Barham is not credible. I don't understand how that means that Barham is not credible when he testifies that I saw Oral Zob in the back of the car. The only person in the back of the car was a 3-year-old child, right? That's what the Cortez brothers testified to, and no other witness testified to that. They left the scene. Oral Zob said, I lied. He's on the record saying I lied. I was not in the car. I was not there. You know, if this is to illustrate that the factual basis should have been admitted to trial. I'm sorry, Mike. No, this is not the factual basis. This is, is everything you said in this affidavit false to your knowledge? Yes, because I was not there. That's Oral Zob and that's in the record. This has nothing to do with the factual basis for the plea of guilty. That completely undermines Barham's affidavit. And he's one of the defendant's boys. The trial court found him credible. But he's still renewed for abuse of discretion. It's not, you know, it's not, I am glad just because a trial court makes a ruling, that does not mean he was not manifestly erroneous or committed manifest error. The trial court was, was observed Barham's demeanor. He considered his bias and motive and found him to be credible. But the trial court must consider whether or not that rises to the level of a colorable claim of actual innocence, that it would probably result, there's a probability that it would result in a different outcome. In other words, an acquittal. Right? Yes. So the Oral Zob question then, if you go back to trial, becomes a jury question. If we look at the evidence under an abuse of discretion, or not abuse of discretion, that's an entry issue, but manifest weight. Manifest weight in determining whether or not this evidence raises a probability that the outcome of the trial would have been different. Because Oral Zob is available as a witness. He's testified under oath. That will come in to undermine, if there were a new trial, Barham's affidavit, as well as all the other evidence. I mean, I, who was it, Oral Zob, that he is absolutely 100% correct here? We don't, he's told different versions. I was there, I wasn't there, he told the. Again, we're looking at the evidence as it exists, and what would be available at trial, and how does Barham's new testimony impact the outcome. You have the defendant recruiting Oral Zob to lie, confirmation that Oral Zob is recruited to lie. You've got evidence in the record that Barham is one of the defendant's boys. How can you possibly say, or how could a trial court reach a conclusion that this evidence was so compelling that it's likely to change the outcome of the trial? That's the trial court's ruling. Can I ask one other question on that topic? If we assume Barham's version of events where he says that Macedo had no awareness that I had a gun, isn't that contradicted by the rest of the evidence in the record as to the extended nature of this incident where you went from the street to the blockbuster to the next street, and all the driving and the physical evidence in the case? Do we have to take Mr. Barham's testimony at face value, and even if we did, does that overcome to such an inclusive degree that we have to assume it changes the outcome? You know, everything happened very fast after the blockbuster. I don't think that Barham is automatically incredible when he says that the defendant didn't know that I had a gun in there. There's collisions. Barham says, I reach in the backseat and grab my gun. It wasn't there. They keep pushing us down the street, and I try to save us by firing at the Chrysler. I don't know how that means that Barham is not being truthful when he says the defendant or petitioner didn't know there was a gun in the car. Even if the petitioner did not know about the gun, just for purposes of this argument, everything that happens after the shooting or to set the shooting up is done by Mercado, and I apologize if I'm mispronouncing the name. He's driving the car. He backs it up. He puts it in a position so that Barham can get a better shot. I mean, and then there might be some flight evidence that occurred as well, but so how can we say this would change the verdict? And that goes to the point of why it would change the verdict. The trial, Mr. Lucero did not testify at trial. His defense team approached Mr. Barham to see if they could testify. And he wouldn't testify either. And he wouldn't testify. So what you have is you have the Cortez brothers, you have police witnesses, a few occurrence witnesses like Pineda, who's at the blockbuster and sees, consistent with the defendant's story, that the car started to drive by quickly within 10 seconds rather than waiting 90 seconds. You know, all the trial record here and all the facts that we're presuming are one side of the story. Now we get Mr. Barham coming back and saying, that's not what happened. You know, they're the ones who rammed us. You know, Martin Cortez testifies at trial that Barham pointed a gun at him at the intersection. He didn't tell the police that on that day. You know, he's got inconsistencies in his testimony. I think it's not, I think we've got to proceed with caution if we're going to just look at the trial record and say these are the facts because Barham wouldn't testify at trial because he was awaiting trial on this. The alternative version was not presented in Mr. Macedo's trial. Could you just comment briefly on the state's reliance on Edwards? Edwards, I believe Edwards. Let me get, if you bear with me, I will. Edwards was the case where there was an alleged alibi presented. Was that the one that was, where the court ultimately affirmed the denial of leave to file successive petitions? I mean, that's a completely different procedure. A procedural set of facts. And then these evidentiary hearings are so fact-specific. You know, the trial court was affirmed. I believe the appellate court was affirmed in Edwards. If I'm thinking of the right case, if I'm answering your question. I believe so, yeah. I don't have it here in front of me, but I've read it. Yeah, you know, a procedural difference in affirming. Because here, Barron's affidavit still puts the defendant in the car during the crime. Without knowledge of the present civil weapon. And Barron testifying that the Cortez brothers were the aggressors. I'm just looking at my notes on Edwards. It indicates the standard here is the probability. So the defendant's case has to show a probability that it's more likely than not that no reasonable juror would have convicted in light of this new evidence. And that's the post-conviction court, after an evidentiary hearing, found that to be the case. And that's a manifest weight of the evidence question. And I would submit that it is not against the manifest weight of the evidence in this case. All right, anything else, Justice Kennedy? I have no further thoughts. All right, Justice Kennedy? All right. I would just conclude by asking this Court to affirm the trial court. Thank you. Thank you, Mr. Kirkham. Thank you, Your Honors. Mr. Kelleher, if you have any response, you may make it at this time. Thank you. I'll first briefly point out that Sergeant Lowell did testify that Martin did talk about a gun misfiring earlier on before the incident on Wing Street. But going back to the letter, we have forensic evidence indicating that Barron wrote this letter. And a reasonable inference can be drawn that someone who writes a letter intends to send that letter. Now in this case, because of the incident that occurred at the Kane County Jail, Barron never had the opportunity to send this letter because it was recovered. But nevertheless, as this Court recognized, it goes right to his intent, his knowledge, consciousness of guilt, his willingness to obstruct the truth in this case, tamper with witnesses, intimidate witnesses, pay them off, create a fictitious story. And that's the whole history of this case. Counsel's response is that it was only his thoughts, he never acted on those thoughts. There's no proof that he ever acted on them. Well, the State never had a chance to cross-examine him on that. And he might have said, yeah, I read that letter, but it was all bluster. I never intended to write that letter. But then the House Conviction Court could assess that response and say, is that credible? Is that trustworthy? What would a reasonable jury believe when you hear a response like that, when you have these damning statements made in that letter? Barron wrote his affidavit approximately four weeks after the defendant's conviction was affirmed? Actually, I believe it was only about three weeks. Three weeks, while they were together at the Hill Correctional Center? Yes. And the timing is significant. Did the trial court comment on that in its ruling? No. No, Your Honor. And just, it is true that the trial court found, made a finding that Barron was credible. However, based on all the points I've made earlier, that finding was tainted because the State never had the opportunity to conduct a fair and accurate cross-examination of Barron. The whole purpose of a third-stage evidentiary hearing is to seek the truth. And at that stage in post-conviction proceedings, the defendant's evidence no longer has to be taken as true. At that point, the defendant has to prove a substantial violation of his constitutional rights. In this case, he has to prove that he's actually innocent, or at least prove that, you know, the evidence is, makes such a, the evidence is so conclusive that it would probably result in a new trial, finding him innocent, if there was a new trial. And the Edwards case is right on point here. You have a co-defendant named Eddie Coleman. He was a fellow gang member. He submits an affidavit saying that, you know, I was responsible for the offense. Edwards had nothing to do with the crime. The Illinois Supreme Court looked at that evidence and said, that's not enough. They said, you know, Eddie critically does not assert that defendant was not present when the shooting took place. Here, Barron's assertions, as this court pointed out, are even less exculpatory because not only does it place defendant at the scene, it places him right in the driver's seat. And the driving was critical here because this offense couldn't have occurred but for the way defendant was driving the car, chasing the victim's car through the streets of Elgin, maneuvering it in a place in a way that blocked them from escaping, putting the car in reverse, causing the accident. And one of the most damning pieces of evidence is... Didn't Barron explain that away and say that it was the victim's vehicle that was the aggressor? Yes, that's one of the many inconsistencies in Barron's testimony and affidavit. But it's interesting that Barron originally was in the passenger seat, but then after the incident at the Blockbuster parking lot, he switches to the back. So he has a strategic advantage now of being able to shoot out the left window or the right window. My time is up. I'll just summarize by saying because of the flawed, intented proceeding, this court doesn't have to defer to the court's credibility findings because it wasn't a proper and fair hearing. And for those reasons, the court's ruling was manifestly erroneous and therefore the people respectfully request that this honorable court reinstate defendant's convictions. Thank you. Thank you, counsel, for your argument this morning. We will take the matter under advisement. We'll issue a decision as soon as possible. And we will now stand adjourned for this proceeding.